**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Christopher Kim and Jennifer Chiu, | ) ) ) | CIVIL ACTION NO. 2:26-cv-01348-RMG |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| Handsome Motors, LLC, and Jack Handegan, III, | ) ) ) | **(JURY TRIAL DEMANDED)** |
| Defendants. | ) ) ) ) | |

Plaintiffs complaining of the Defendants would show this honorable Court:

**INTRODUCTION**

This matter arises because of the Defendants' blatant misrepresentations, frauds, and concealments of the condition of the vehicle at issue as set forth more fully herein. Defendants had actual and constructive knowledge of the serious safety defects in the vehicle and actively misrepresented and concealed these defects while acknowledging the significant costs of these conditions and the need to not acquire a vehicle with such defects. Despite specific requests regarding information about these specific defects, and with superior knowledge of the existence and extent of these defects, Defendants actively misrepresented, concealed, and lied to Plaintiffs regarding these conditions knowing that Plaintiffs would rely on the representations to their detriment. In the alternative, the Defendants were negligent, grossly negligent, reckless, in making their representations to the Plaintiffs. As a result, the Plaintiffs purchased the subject

vehicle only to discover the true nature and extents of these dangerous conditions upon visual inspection.

## PARTIES

1.     Plaintiffs are residents of the State of California and were so at all times relevant to the claims and causes of action set forth herein.

2.     Upon information and belief, Defendant Handsome Motors, LLC, is and was at all times relevant to the claims and causes of action herein a limited liability company formed and existing under the laws of the State of South Carolina.

3.     Upon information and belief, Defendant Jack Handegan, III, is a resident and citizen of the County of Charleston, State of South Carolina and was at all times relevant to the claims and causes of action set forth herein.

4.     Upon information and belief, Defendant Handsome Motors is an alter ego of Defendant Jack Handegan that Jack Handegan uses to facilitate his fraudulent behaviors and is a legal fiction without sufficient assets, resources, insurance, and corporate formalities to qualify as a real business under the laws of the State of South Carolina.

## JURISDICTION AND VENUE

5.     This matter is brought pursuant to Federal law and violations of 18 U.S.C. §§ 1962(c), 1964(c), commonly referred to as the Racketeering and Corrupt Influences  (RICO) thereby conferring this Court's jurisdiction pursuant to its Federal question jurisdiction at 28 U.S.C. § 1331.  That this Court has jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367 where the acts and omissions of the State law claims are part of the same case and controversy.

6.     This Court has further jurisdiction over this matter where there is complete diversity of the parties, and the claims exceed seventy-five thousand dollars ($75,000.00) in damages.

7.     Venue is proper in the District of South Carolina Charleston Division where certain acts and omissions of the Defendants have occurred including the purported resolution of the issues as set forth more fully herein and the negotiation of instruments transmitted to the Plaintiffs by the Defendants electronically and returned to Defendants through the mails.  Venue is further proper where the Defendants reside and exist within Charleston County, South Carolina.

## STATEMENT OF FACTS

8.     Defendant Handsome Motors, LLC, (hereinafter alternatively referred to as "HM") was and is at all times relevant to this matter a limited liability company organized under the laws of the State of South Carolina.

9.     Defendant Handegan, III, is, upon information and belief, the sole member of HM, and is the true party in interest to the business.

10.     Upon information and belief Defendant HM, is merely a shell created and intended to attempt to shield and hide Defendant Handegan, III, from personal liability but lacks the requisite formalities to be an independently existing entity.  As such, Defendant HM should be disregarded.

11.     On or about December 12, 2024, the Defendants placed an active online auction on a web site known as Bring A Trailer, (hereinafter "BAT").  BAT is an online web auction whereby sellers solicit BAT to authorize their listing of vehicles.  Upon information and belief, BAT curates vehicles and the sellers who are allowed to list vehicles for sale on the site.

12.     As a part of the auction process, sellers, in this case Defendants, provide multiple photos and a detailed representation of the vehicle condition to BAT who then publishes this information as a part of each auction listing.

13.     Buyers, including Plaintiffs, may then review the photos and ask questions of the sellers, including these Defendants.  Viewers of each auction may also leave comments and questions on the listing.  Such questions and comments are generally publicly viewable by other potential buyers.  Further, sellers, including these Defendants, provide responses to public posts which are also viewable by the public including these Plaintiffs.

14.     A part of the system of BAT is the expectation that sellers, including these Defendants, will respond to questions with truthful and accurate information regarding the listed vehicle.   Further, the online community has developed a reasonable expectation of reliance on the representations made by sellers to potential bidders and purchasers.   BAT's online information states that they "represent each car in a thorough and straightforward fashion using comprehensive information and photo galleries provided by sellers."

15.     In this instance, on or about December 12, 2024, Defendants listing for a 2006 Mercedes Benz "G" wagon bearing VIN *WDCYR49E26X166612* went 'live' on the BAT web site.  Defendants provided photos of the vehicle to BAT as well as a representation and description of the vehicle.

16.     Defendants listing stated the vehicle had "34k miles following history in Kentucky and Ohio …". Defendant's listing stated the vehicle had "a clean Carfax report, and a clean Montana title."

17.     Defendants' listing stated "the tires were replaced and brake fluid flush was performed in November 2024, according to the selling dealer."  Defendants also represented in

the listing that "the valve cover gaskets and belts were replaced and the oil was changed in November 2024." Defendants also represented "that the transmission and differential fluids were changed in preparation for the sale." These representations were substantially false at the time they were made.

18.     Of the over 200 photos provided by Defendants in the listing, only eight were of the undercarriage and at least two of those appear to be duplicates.

19. That the Defendants initial comments on the auction listing were

> I want to start this auction off by explaining this: I spend 5+ hours EVERY single day trying to find clean G Wagons. I sort through dozens of rusty, high mileage, 5+ owners and other weird issues every day.

> All components works like new (yes the differential lockers are fully operable with a demonstration video to come)

> Ensuring you have a turn key and ready to enjoy G Wagon. Just fully serviced and inspected, this one is ready to go top to bottom. Exceptional condition inside and out. Absolutely

20.     That the Defendants were specifically asked on December 12, 2024, regarding "any rust on the door hinges, windows, or elsewhere" and responded:

12/12/24 at 9:27 PM     **littlehandegan (The Seller)**   👍 15,645

@djw131 please see the video where I do my "g wagon" rust check in the normal spots

This is an absolutely clean G500 with no issues!

👍 2                                              🏳 Flag as not constructive

21.     That the Defendants represented that they conducted a "rust check" but failed to disclose the gross extent of corrosion to the vehicle.

22.     That the Defendants stated in the "rust" video that you should not "shoot yourself in the foot and buy one with rust and up regretting it because boy will you."

23.     That the "rust" video does not show the actual condition of the vehicle and Defendants selectively recorded the vehicle without showing its true condition for the specific purpose of misrepresenting the true condition of the vehicle in order to deceive Plaintiffs.

24.     That Defendants post of December 18, 2024, at 8:45 a.m.

You will not find a nicer G500. You definitely won't find one with only 2 owners and super super low mileage (only driven 1,800 miles per year!

25.     Defendants also stated:

12/18/24 at 8:45 AM     **littlehandegan (The Seller)**   👍 15,645

I want to post a little detail about why I love G Wagons:

1. Incredible resale value. I have been buying them for nearly 15 years now. Like NAS Defenders they fluctuate with the market slightly but always maintain strong values.

26.     That Defendants held themselves out to be experienced experts within the world of Mercedes Benz G class vehicles and their condition.

27.     That the Defendants knew that rust and corrosion on the G500 is a serious and expensive issue and creates substantial problems for owners.

12/16/24 at 2:01 PM

**littlehandegan (The Seller)** 👍 15,645

Photos of factory mirrors, bumpers, grill, tails, and fog lights etc

Please note how clean the commonly corroded mirror basses are. They are like new.

28.     That the Defendants actively misrepresented and concealed the true condition of these items.  Alternatively, the Defendants were negligent, grossly negligent, and / or reckless in their representations of the vehicle.

29.     That the Defendants continued to misrepresent the condition of the vehicle to the Plaintiffs and other bidders.

12/16/24 at 1:58 PM

**littlehandegan (The Seller)** 👍 15,645

Thanks so much fellas!

Adding this driving video and demo of all electronics.

For those who don't want to sit through the entire video: truck drives as nice as a new one. All electronics work as they should. No pixels are dead in the cluster as many are of this vintage. Drives true and straight, brakes are good, no pulling shaking or shimmying. A/C, heat, seats, windows all work. Sunroof works but cable does make some noise. Does

30.     During the auction, the Defendants provided several comments in response to postings by bidders and observers.  Included among the Defendants representations to bidders, including the Plaintiffs, is Defendants post made on December 19, 2024, at 7:04 a.m.

> If you have been looking for a nice G500 I can almost guarantee you will be blown away with ever aspect of this low mileage G500. The condition is as nice as they come and possibly the nicest 2006 G I have ever had my hands on....its that nice!

31.     That the Defendants repeatedly extolled the quality of the vehicle and denied any problems with rust or other issues.

> I can promise you won't find a nicer example. It may not be the cheapest but good things never are! 😜

32.     That the Defendants were familiar with the Mercedes G500 and various corrosion issues associated with these vehicles.

33.     That the Defendants knew that their representations in the auction were false and that the vehicle was unsafe, seriously corroded, and requires significant work and money to address serious safety issues due to overwhelming corrosion.

34.     That, upon information and belief, the Defendants actively attempted to hide and conceal the true condition of the vehicle, including through the selective photography of the chassis, suspension, brakes, and other components.

35.     That the Plaintiffs were the winning bidder of the vehicle on December 19, 2024, paying their bidding price of $58,500.00 to the Defendants, plus $2,925.00 to the auction site for the buyer's fee, and shipping costs of $2,289.00.

36.     That the Plaintiffs paid the auction site $2,925.00 at the close of the bidding based on the terms of the auction site and their legal commitment to automatically pay the buyer's fee via credit card upon close of the auction.

37.     Further, that failure of the Plaintiffs to follow through on their purchase would have breached their agreement with BAT and incurred adverse consequences to them including loss of the buyer's fees and likely termination from the auction site.

38.     That the auction site has retained the buyer's fee paid to it by Plaintiffs.

39.     That the Plaintiffs initiated a wire transfer of $58,500.00 to Defendants on or about December 23, 2024, and that the Defendants received and have retained those funds.

40.     That the Defendants then transmitted to the Plaintiffs purchase documents.

41.     That these documents included documents that were not disclosed within the auction listing.

42.     Further that the Plaintiffs would not have agreed to execute and would not have bid on the auction had these conditions and documents been disclosed in advance.

43.     That the Plaintiffs were unable to rescind the purchase and were forced to execute the document or lose their monies paid to the auction site and to the Defendants, including fees, and costs.

44.     Additionally, pursuant to the terms of the auction site a non-paying bidder would have significant adverse consequences under the terms of the site agreement.

45.     That the Defendants shipped the vehicle to the Plaintiffs only after the Plaintiffs returned the purchase documents to Defendants.

46.     That upon receipt of the vehicle following the close of the auction the Plaintiffs first became aware of the true condition of the vehicle and the significant and material misrepresentations and omissions by Defendants.

47.     That the Plaintiffs discovered significant corrosion across the vehicle including areas that Defendants specifically and actively represented were free of rust and corrosion. These areas include, but were not limited to, the undercarriage, suspension components, frame structure, brakes, engine components, engine compartment, mirror bases, rocker panels, windshield frame, and other body areas.

48.     These corrosion issues were serious and significant and Defendants knew or should have known that such condition existed, contrary to their representations on BAT.

49.     Plaintiffs further discovered significant leaking from the vehicle's rear main engine seal, transfer case, and differentials, none of which were disclosed by Defendants.

50.     That the Defendants further misrepresented the condition of the braking systems which resulted in a braking failure during Plaintiffs' initial operation of the vehicle.

51.     That the Defendants further misrepresented service work purportedly performed on the vehicle prior to the sale to Plaintiffs.

52.     That the Defendants further misrepresented the status of the Defendants' modifications to the vehicle including the Defendants' permanent alteration of the vehicle thereby preventing Plaintiffs from being able to return the stock bumper, in contradiction of Defendants' representations.

53.    That the Defendants further misrepresented the condition of electrical components including, but not limited to, missing switches, intermittent error messages, and malfunctioning mirrors.

54.    That the Defendants further failed to execute repairs promised within the auction listing including repairs to the passenger front seat surface and sunroof noise.

55.    That the Defendants further failed to include with the vehicle original stock components that were specifically identified as being a part of the sale.

56.    That the Defendants conspired with one or more unknown persons to act as a "shill" for the purpose of expressing an actual independent inspection and "vouching" for the vehicle.

57.    That the actions of the Defendants were intended to defraud the Plaintiffs of the value of the vehicle and to continue the fraud upon the Plaintiffs.

58.    That the Defendants have failed and refused to refund to the Plaintiffs their monies despite demands from Plaintiffs.

59.    That the Defendants have engaged in a conspiracy with one or more persons to deprive the Plaintiffs of the value of the vehicle.

60.    That the Defendants representations and omissions were material and the Plaintiffs had a right to rely on these representations.

61.    That the Defendants have committed two or more predicate acts, including but not limited to; theft of Plaintiffs' funds through conversion, use of the wires and mails to defraud the Plaintiffs, use of the wires and mails to perpetuate their fraud upon the Plaintiffs, utterance of one or more negotiable instruments with actual or constructive knowledge that the instruments

were invalid and lacking in consideration, refusal to make the negotiable instrument good after written demand, and in such other manners as will be demonstrated at trial.

62.    That the Plaintiff has suffered damages as a proximate result of the Defendants' conduct and that such damages exceed the amount of seventy-five thousand dollars ($75,000).

**FOR A FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

63.    That the Plaintiff repeats and realleges each and every fact, allegation, and cause of action as if repeated herein verbatim.

64.    That the Plaintiffs and Defendants entered into an agreement whereby Defendants would sell to Plaintiffs the vehicle as represented in the auction listing, including the comments and videos.

65.    That the Defendants represented the condition of the vehicle to be the nicest example of a G500, that it was fully functional with recent service and all features functioning, that it was free of rust, that all electronics work properly, that the stock components could be returned, that the stock components would be included with the vehicle, and that Plaintiffs would "not find a nicer G500."

66.    That the Plaintiffs agreed to provide valuable consideration to Defendants for the vehicle represented by the Defendants.

67.    That the Plaintiffs performed by paying the Defendants $58,500.00 by wire transfer initiated on or about December 23, 2024.

68.    That the Defendants failed and refused to comply with the terms of the agreement even after demand by the Plaintiff.

69.    That the Defendants acts and omissions are in breach of the parties' agreement.

70. That the Plaintiff has suffered damages as a proximate result of the Defendants' breach of their agreements including but not limited to actual, consequential, and punitive damages. That the Plaintiff is entitled to an award of actual, consequential, special, and punitive damages from the Defendants.

**FOR A SECOND CAUSE OF ACTION – UNFAIR TRADE PRACTICES S.C. Code Ann., § 39-5-10, et. Seq.**

71. That the Plaintiffs repeat and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

72. That the Defendants are a business subject to the provisions of S.C. Code Ann., 39-5-10, et. Seq., commonly referred to as the South Carolina Unfair Trade Practices Act.

73. That the Plaintiffs are consumers as defined by the South Carolina Unfair Trade Practices Act.

74. That the Plaintiffs and Defendants entered into a consumer transaction as defined by the Act.

75. That the Defendants' conduct is capable of repetition and affects the public interest.

76. That the Defendants' engaged in unfair and deceptive conduct as more fully set forth herein and as will be discovered during this matter.

77. That the Defendants' unfair and deceptive conduct damaged the Plaintiffs.

78. That as a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered actual damages, consequential damages, attorney's fees and costs, and they are entitled to an award of actual damages, consequential damages, attorney's fees and costs, and a trebling of all damages including attorney's fees and costs in this matter.

79.    That the Plaintiffs are entitled to these damages against the Defendants jointly and severally.

## FOR A THIRD CAUSE OF ACTION

## FRAUD IN THE INDUCEMENT

80.    That the Plaintiffs repeat and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

81.    As outlined more fully herein, Defendants engaged in a pattern and practice designed to entice and lure Plaintiffs into purchasing the vehicle at issue in this matter and as more fully described herein.

82.    Defendants knew or should have known that their representations and omissions to Plaintiffs were designed and calculated to instill false confidence in the Plaintiffs as to the true nature of the vehicle and its condition.

83.    Defendants further knew or should have known that their representations and omissions to Plaintiffs were designed and calculated to instill false confidence in the Plaintiffs as to the value of the vehicle.

84.    These representations and omissions by Defendants to Plaintiffs were material because without them the Plaintiffs would not have been convinced to enter into an agreement to purchase the subject vehicle paying Defendants $58,500 and incurring additional charges, including but not limited to, the auction site fees and shipping costs, lost opportunity costs, mechanical charges including inspections, and other additional costs and expense for which they are entitled to compensation.

85.    Plaintiffs' reliance on the information and representations of the Defendants was reasonable.

86.     Plaintiffs in fact relied on the material information and representations of the Defendants.

87.     Plaintiffs would not have purchased the vehicle from Defendants but for these false and misleading representations and omissions.

88.     Plaintiffs would not have entered into an agreement with the Defendants but for the Defendants' false and misleading representations and omissions.

89.     As a direct and proximate result of Defendants' fraudulent inducement to enter into these agreements, Plaintiffs have sustained actual, special, and consequential damages as more fully outlined and pled herein.

90.     Plaintiff hereby demands judgment against Defendants, jointly and severally, and seek all actual, special, consequential, and punitive damages in a reasonable amount as determined by a jury, and costs and attorneys' fees.

## FOR A FOURTH CAUSE OF ACTION –

## BREACH OF TRUST WITH FRAUDULENT INTENT

91.     That the Plaintiffs repeats and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

92.     Plaintiffs purchased the vehicle at issue in this matter from the Defendants based on representations made by the Defendants and paid to the Defendants $58,500.00, with the intent and understanding the Defendants would provide the vehicle described and represented within the auction listing.

93.     Defendants breached that trust by failing to provide the vehicle as represented and failing to transfer the vehicle as described and represented by Defendants.

94.     Upon demand of the Defendants they refused to return to the Plaintiffs the

consideration transferred to Defendants, despite Defendants having failed to provide the described and represented vehicle.

95.    Defendants knowingly and fraudulently utilized the $58,500.00 for their own purposes with the knowledge and intent of denying Plaintiff the use and value of the money and the represented vehicle.

96.    Defendants' acts and omissions have proximately and directly caused Plaintiffs damages.

97.    That Plaintiffs are thereby entitled to an award of actual, consequential, special, and punitive damages and attorneys' fees and costs from the Defendants, jointly and severally.

### FOR A FIFTH CAUSE OF ACTION – UNJUST ENRICHMENT

98.    That the Plaintiffs repeat and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

99.    Defendants have realized economic benefits as a direct and proximate result of their aforementioned acts and omissions.

100.    Defendants' realization of these economic benefits was to the detriment of Plaintiff.

101.    Defendants' realization of these economic benefits to the detriment of the Plaintiff was unjust.

102.    It would be unjust for Defendants to retain these economic benefits.

103.    Plaintiffs are therefore entitled to an award of damages from Defendants to divest and disgorge them of their unjust economic benefits.

104.    Plaintiffs hereby demand judgment against Defendants, jointly and severally, and seeks all actual, special, consequential, and punitive damages in a reasonable amount as determined by a jury, and costs and attorneys' fees.

### FOR A SIXTH CAUSE OF ACTION –

### VIOLATION OF RICO - 18 U.S.C. §§ 1962(c), 1964(c)

105.    That the Plaintiffs repeat and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

106.    That the Defendants have committed two or more predicate acts as more fully set forth hereinabove including but not limited to the conversion of $58,500.00 to themselves, the fraudulent representations of the vehicle, and the use of the mails and wires to further their fraud and misdeeds.

107.    That, upon information and belief, the Defendants and others unknown entered into an agreement to defraud the Plaintiffs and obtain and retain $58,500.00 without providing the vehicle described and represented in the auction.

108.    That the Defendants have profited from their fraudulent representations of the vehicle.

109.    That the Defendants have willfully engaged in a continuation of the scheme to defraud the Plaintiffs by obtaining $58,500.00 from Plaintiffs while failing to provide the vehicle represented to Plaintiffs.

110.    That the Defendants have directly and indirectly engaged in a pattern of racketeering activity.

111.    That the Defendants are and have been engaged in a criminal enterprise to defraud the Plaintiffs.

112.    That the Defendants have utilized the mails and wires to perpetuate their activities to the detriment of the Plaintiffs.

113.    That the Defendants have affected interstate commerce through their criminal activities.

114.    That the Plaintiffs were injured in their property and suffered economic loss as a proximate result of the aforesaid conduct of the Defendants.

115.    That the Plaintiffs are entitled to an award of actual, consequential, special, and punitive damages from the Defendants jointly and severally.

116.    That the Plaintiffs are entitled to a trebling of the damages and attorney's fees and costs.

**FOR A SEVENTH CAUSE OF ACTION – FRAUD**

117.    That the Plaintiffs repeat and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

118.    As outlined herein, Defendants represented to Plaintiffs certain facts regarding the vehicle at issue in this matter including the condition, value, functionality, and safety.

119.    The representations by the Defendants to Plaintiffs were false.

120.    Defendants' representations and omissions to Plaintiffs were material because Plaintiffs reasonably believed them to be true and would not have entered into any agreement with the Defendants absent such representations.

121.    Plaintiffs reasonably relied on the information and representations made by the Defendants.

122.    Defendants knew the representations made to Plaintiffs were false.

123.    Defendants concealed the true information from the Plaintiffs with the

knowledge that the Plaintiffs were reasonably relying on their representations.

124. Defendants made these false representations to Plaintiffs with the intent that Plaintiffs rely on these false representations.

125. Plaintiffs had a right to rely on the representations made by Defendants.

126. As a direct and proximate result of Defendants' fraudulent conduct, as alleged and pleaded more fully above, Plaintiffs have suffered actual, special, and consequential damages.

127. Plaintiffs hereby demand judgment against Defendants, jointly and severally, and seeks all actual, special, consequential, and punitive damages in a reasonable amount as determined by a jury, costs, and attorneys' fees.

## **FOR A EIGHTH CAUSE OF ACTION – CONVERSION**

128. That the Plaintiffs repeat and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

129. Defendants knew or should have known that the vehicle and value therein taken from Plaintiffs belonged to Plaintiffs.

130. Defendants knew or should have known that the vehicle and value taken from the Plaintiffs did not belong to them.

131. Defendants obtained the $58,500.00 from the ownership, custody, and control of the Plaintiffs without valid consent, permission, or authorization.

132. Defendants knew or should have known that the value therein did not belong to and were not the property of the Defendants.

133. Defendants converted the $58,500.00 to their own purpose and use and deprived Plaintiffs of the value and use of both the vehicle and the payment.

134. Defendants have proximately and directly damaged Plaintiffs thereby entitling Plaintiffs to an award of actual, consequential, and punitive damages and attorneys' fees and costs.

135. Plaintiffs hereby demand judgment against Defendants, jointly and severally, and seeks all actual, special, and consequential damages, as well as punitive damages in a reasonable amount as determined by a jury, costs, and attorneys' fees.

**FOR A NINTH CAUSE OF ACTION – SOUTH CAROLINA DEALERS ACT – S.C.**

**CODE ANN. § 56-15-10, et. seq.**

136. That the Plaintiffs repeat and reallege each and every fact, allegation, and cause of action as if repeated herein verbatim.

137. That the Defendants are automotive dealers subject to the terms and conditions of the South Carolina Dealers Act, S.C. Code Ann. § 56-15-10, et. seq.

138. That the Defendants have violated the Act by falsely and materially misrepresenting the vehicle at issue herein.

139. That the Defendants advertisement of the vehicle to Plaintiffs was false and misleading as more fully described herein.

140. That the Defendants' misrepresentations and omissions as described more fully herein were made in bad faith, were unconscionable, were false, were misleading, and were intended to deceive Plaintiffs.

141. That the Defendants' conduct was willful, wanton, reckless, and intentional.

142. That the Defendants' conduct was malicious.

143. That the Plaintiffs have suffered damages as a proximate result of the Defendants' misconduct as more fully described herein.

144. That the Plaintiffs are entitled to an award of damages from the Defendants, jointly and severally, for all actual, consequential, special, and punitive damages, with a trebling therein, plus attorney's fees and costs and for a doubling of those damages, fees, and costs.

**PRAYER FOR RELIEF**

WHERFORE the Plaintiffs prays for this Court to award the following relief;

1. An award of money damages against the Defendants, jointly and severally, including all actual, consequential, punitive, and special damages;

2. An award of all costs and fees incurred in this matter;

3. That the Plaintiffs further be awarded all doubling and trebling of these damages and fees as allowed and provided by law;

4. And, for such other and further relief as the Plaintiffs may be entitled.

MBR Law, LLC


BY _s/ Matthew B. Rosbrugh_
Matthew B. Rosbrugh
S.C. Bar No. 68619
Fed Bar No. 7590
Post Office Box 292290
Columbia, South Carolina 29229
(803) 753-1432
matt@mbrlawllc.com
ATTORNEY FOR PLAINTIFFS


March 29, 2026
Columbia, South Carolina